IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY TALLEY,

                Plaintiff,

v.                                             OPINION and ORDER

KARL HOFFMAN, DALIA SULIENE,                 14-cv-783-jdp
and CATHY A. JESS,

                Defendants.

---

      The general rule in Wisconsin is that a party who signs a contract after a fair opportunity to read the contract is bound by its terms. But this rule is subject to exceptions. This case raises the question whether a broad release of claims signed by a plaintiff in one case in this court should apply to another pending case, even though that case was not explicitly mentioned in the settlement agreement. Given the circumstances here, I will deny defendants' motion for summary judgment on the issue. An evidentiary hearing is necessary to determine whether the release should apply to plaintiff's other lawsuit.

      Plaintiff Timothy Talley, appearing pro se, is now an inmate at Oakhill Correctional Institution. Talley alleges that when he was at Columbia Correctional Institution, prison staff disregarded his severe pain caused by back problems and a failed spinal fusion surgery. He brings claims under the Eighth Amendment and the Rehabilitation Act. I granted defendants' motion for summary judgment in part, leaving a handful of claims for trial. Dkt. 71.[1]

      Talley had filed another lawsuit in this court, No. 17-cv-670-jdp, about prison medication-distribution procedures. The parties settled that case in January 2020 and entered

---

[1] Unless otherwise noted, all docket citations are to case No. 14-cv-783-jdp.

a stipulation of dismissal. Dkt. 42 in the '670 case. Several months later, defendants filed a motion to dismiss the '783 case relying on the settlement agreement for the '670 case. Dkt. 86. Talley responded that he agreed to dismiss the '670 case but that he had not agreed to dismiss the '783 case along with it, and that opposing counsel was misleading the court by representing that Talley intended to dismiss the '783 case. I converted defendants' motion to dismiss into a summary judgment motion and I directed the parties to explain the circumstances leading to the parties' settlement agreement in the '670 case and the parties' actions regarding the '783 case following that settlement. Dkt. 92.

Defendants responded with a formal motion for summary judgment, Dkt. 93. Some of the responsive filings were a few days late, prompting a flurry of motions. *See* Dkt. 99; Dkt. 101; Dkt. 103. I will accept the filings and deny Talley's motions for default and to strike.

On to the substance of defendants' motion. District courts have the authority to enforce settlement agreements in cases pending before them. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) ("[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it."). I construe the settlement agreement from the '670 case under Wisconsin contract law. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000); *see also United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1219 (7th Cir. 1990) ("In Wisconsin, courts are to construe settlement agreements and other forms of releases as contracts.").

The settlement agreement the parties entered into in the '670 case states that in return for a settlement amount of $1,850, Talley agreed to dismiss the '670 case and release the state from further claims. Dkt. 87-1. The critical "release of claims" section of the agreement states as follows:

2

> In exchange for the consideration listed above, Plaintiff releases and forever discharges the State, the DOC, and their officers, agents, employees, successors, personal representatives, and insurers (the "Released Parties") from any and all manner of action or actions (including cause or causes of action, suits, debts, covenants, agreements, liabilities, rights, damages, costs, claims of interest, awards of attorney fees, claims and demands of every kind and nature whatsoever, in law or equity, whether based on State or Federal law), that relate to any action or inaction—of any State of Wisconsin or DOC employee—that took place on any date before this Agreement is fully executed.

*Id.* at 1.

The agreement contains a related covenant not to sue any released party for any matter discharged by the agreement, as well as a "reservation of rights" section stating that Talley "reserves any and all rights he may have to challenge any future acts of any Department of Corrections or other State employee." *Id.* at 2.

In my previous order, I concluded that the settlement agreement is unambiguous and by its terms Talley released state employees from any claim relating to an action or inaction by a DOC or state employee occurring before the settlement date. Dkt. 92, at 3. The reservation-of-rights section states only that Talley reserves the right to challenge *future* acts of DOC or state employees. *Id.* at 3–4. If valid, the release covers Talley's remaining claims in the '783 case because they are claims concerning past harm at a previous place of confinement.

But Talley contends that opposing counsel misled him into thinking that the release covered only actions or inactions related to the '670 case. I noted that a contract could be declared void or unenforceable if a party makes a material misrepresentation of fact, and that parties may submit extrinsic evidence in support of such a claim. *Id.* at 4 (quoting *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 456 N.W.2d 585, 588 (1990); *Batt v. Sweeney*, 2002 WI App 119, ¶ 9, 254 Wis. 2d 721, 647 N.W.2d 868).

Talley has provided a declaration stating that that he discussed settlement over the phone with the DOJ lawyer initially representing defendants in the '670 case; counsel offered $1,850 to settle the case ($1,500 plus the filing fee of $350). Dkt. 98. But settlement was not accomplished before new counsel was assigned to the case. In late December 2019, Talley sent new counsel a letter stating his desire to settle the '670 case for $1,500 plus the $350 filing fee, as offered by previous counsel. Dkt. 96-1, at 1. At no point did Talley offer to fold settlement of this case in with the '670 settlement, nor did either lawyer representing defendants in the '670 case mention including the '783 case.

Defendants do not provide a declaration from the first DOJ lawyer on the '670 case. Defendants' second lawyer on the '670 case states in his declaration that he did not speak directly with Talley about settlement. Dkt. 96. He received Talley's letter offering to settle for $1,850 and confirmed with his supervisor at the Department of Justice—who happened to be the original lawyer on the case—that $1,850 was within his settlement authority, and then sent the prison's litigation coordinators the written agreement for Talley to review. Counsel notes that the broad release-of-claims clause is a "standard provision" ordinarily included in DOJ's settlement agreements in prisoner cases. *Id.* at 2. Counsel states that he "never indicated to Plaintiff that the release would be narrower than it reads or that it would not apply to his pending cases, and [he] never directed anyone to so indicate." *Id.*

Defendants also submit a declaration by counsel in the '783 case. Dkt. 95. He says that he was not immediately aware of the settlement in the '670 case.[2] In March 2020, after the court granted Talley's motion to allow him to mediate the '783 case pro se (the court attempted

---

[2] Counsel in the '783 case appeared for defendants in the '670 case, *see* Dkt. 32 in the '670 case, but from the proceedings in that case it is apparent that he was not the lead attorney.

4

to recruit counsel to represent Talley in mediation in both cases but was unsuccessful), counsel reviewed the file and Talley's other cases and saw that in the '670 case Talley had signed the settlement agreement containing a release of claims that would apply to this case. Counsel in the '783 case didn't immediately file a motion to dismiss the case pursuant to the release of claims, but counsel did so several months later, after Talley stated that there had been no settlement in the case and he asked for a new schedule to resume proceedings.

Defendants ask me to hold Talley to the unambiguous language in the release. In response to Talley's assertion that counsel misled him about the scope of the settlement, counsel says that he "never indicated to Plaintiff that the release would be narrower than it reads." But under Wisconsin contract principles, misrepresentations aren't limited to overt lies about the content of an agreement. And Talley isn't arguing that counsel made an overt promise that the '783 case would survive the settlement. Instead, Talley argues that the parties didn't discuss the '783 case at all and that counsel deceived him by adding a release significantly broadening the scope of the agreement to include the '783 case. That is, counsel omitted to tell Talley that he inserted a provision effectively settling the '783 case as well, for no additional benefit to Talley.

Wisconsin contract-law principles reveal multiple potential flaws with defendants' release defense. The type of misrepresentation by omission that Talley raises here could support a fraudulent misrepresentation claim. Failure to disclose a fact is a misrepresentation if a party has a duty to disclose that fact. *Hennig v. Ahearn*, 230 Wis. 2d 149, 165, 601 N.W.2d 14, 22 (Ct. App. 1999) ("'If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the nonexistence of the fact.'" (quoting *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95, 100 (1980)). This line of cases relies

5

largely on Restatement (Second) of Torts § 551(2)(e) (1977), which states that a party to a business transaction has a duty to disclose

> facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

In determining whether counsel had the duty to disclose the scope of the release to Talley, the key question is whether Talley would reasonably expect disclosure of that provision. *Hennig*, 601 N.W.2d at 22. The Restatement states:

> In general, the cases in which [§ 551(2)(e)] has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.

Restatement (Second) of Torts § 551 cmt. *l*.

Although the question whether counsel had a duty to disclose the scope of the release is a policy decision that is a question of law, that decision depends on the circumstances surrounding that decision as determined by the fact finder:

> "If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty."

*Hennig*, 601 N.W.2d at 23 (quoting Restatement (Second) of Torts § 551 cmt. m.).

To support a misrepresentation theory, Talley must also show that he justifiably relied on counsel's failure to point out that the settlement agreement contained a release that would cover the '783 case. *Id.* The recipient of a fraudulent misrepresentation is justified in relying

6

on it unless the falsity is actually known or is obvious to ordinary observation. *Id.* at 24. The issue of justifiable reliance is a question of law, but whether a falsity is obvious is usually a question of fact. *Id.* Talley doesn't actually say whether he read the agreement, although I infer him to be saying that either he didn't read it or he didn't read it closely enough to grasp the import of the broad release language. Nonetheless, a party's failure to read the contract is only one factor in considering the totality of the circumstances surrounding the transaction. *Id.*; *see also Batt*, 2002 WI App 119, ¶ 15 ("when fraud is pled, the facts of each case that shall be considered must include the intelligence and experience of the misled individual(s) and the relationship between the parties to determine whether the individual(s) acted reasonably when relying on the misrepresentation.").

Alternatively, mistake is another potential ground for disregarding the release: in Wisconsin, reformation of a contract is appropriate when it "fails to express the intent of the parties, either because of the mutual mistake of the parties, or because of [unilateral mistake] coupled with fraud or inequitable conduct of the other." *Id.* at 26. The facts necessary to prove a reformation claim must be shown by clear and convincing evidence. *Prezioso v. Aerts*, 2014 WI App 126, ¶ 39, 358 Wis. 2d 714, 858 N.W.2d 386; *Hennig*, 601 N.W.2d at 27.

Under a theory of unilateral mistake with fraud, Talley would have to show that he mistakenly believed that the settlement agreement represented the terms to which he had agreed (settlement of only the '670 case), which induced him to sign it, and that counsel knew that Talley was mistaken but did nothing to correct that misapprehension. *Id.* at 27. As with a misrepresentation claim, a party asserting a unilateral mistake with fraud theory must establish that his reliance on counsel's misrepresentation by omission was justified. *Id.*

Although Talley believes that counsel intentionally misled him by including the broad release language, that's not the only reasonable inference from the record. In his declaration, counsel stops short of stating that he intended to settle the '783 case by including the release clause. One possible inference from the facts here is that just like Talley, counsel did not intend to resolve the '783 case with the release. Under the doctrine of "mutual mistake," a contract may be reformed when the "'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" *Vandenberg v. Cont'l Ins. Co.*, 2001 WI 85, ¶ 50, 244 Wis. 2d 802, 628 N.W.2d 876 (quoting Restatement (Second) of Contracts § 155 (1981)).

On this limited record, there are multiple factors supporting a mutual mistake theory. As a starting point, the only case number mentioned in the parties' settlement correspondence was the '670 case. As Talley points out, counsel was not in position to directly settle both cases because he was not counsel of record in the '783 case. The declarations of counsel in the two cases appear to show that they did not communicate with each other about settling the cases globally, even though counsel in the '670 cases had months earlier requested and obtained a stay of that case "[g]iven the possibility of a global settlement." Dkt. 34 in the '670 case, at 1.

If counsel were trying to settle both cases, the customary way to do so would be either to explicitly propose a global settlement or to settle each case sequentially. It is exceedingly unlikely that a competent ethical attorney would intentionally attempt to dispose of a group of two active cases by entering into an explicit agreement to settle only one of the cases while leaving the second case to be implicitly resolved by the release of claims. One obvious reason not to try that strategy is the high likelihood of it backfiring as it has here, with additional

8

litigation caused by the confusion over whether the parties actually agreed to effectively settle both lawsuits with an agreement explicitly mentioning only the '670 case.

Additionally, counsel's statement that he included the broad release as a "standard provision" of DOJ's settlement agreements in prisoner cases suggests that the release was added as boilerplate and not as the result of a conscious choice to resolve the '783 case. The delay by counsel in the '783 case seeking dismissal of that case following settlement of the '670 case strongly suggests that counsel in the '670 case didn't grasp the import of the release language—otherwise he would have immediately told counsel in the '783 case that the settlement agreement disposed of that case. The lack of any additional consideration for dismissal of the '783 case in light of the fact that Talley appeared to get back the $350 filing fee for the '670 case as part of the settlement also suggests that the parties didn't intend to dispose of the '783 case. *See Gielow v. Napiorkowski*, 2003 WI App 249, ¶ 27, 268 Wis. 2d 673, 673 N.W.2d 351 ("Although inadequate consideration will not in itself justify setting aside a release, it is a factor properly considered and is strong evidence tending to show a mutual mistake of fact.").

The record at this point is not clear enough to determine as a matter of law whether I should disregard the release clause under any of these theories. Further development of the facts will be necessary. In particular, the analysis may turn on the credibility of counsel's or Talley's testimony about their intent in signing the settlement agreement and their understanding of the consequences of the agreement. When there is a dispute of material fact over the existence or terms of a settlement agreement, the district court should conduct an evidentiary hearing to resolve the matter. *See Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004); *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). I will direct the clerk of court to schedule an evidentiary hearing to take testimony from Talley

9

and counsel in the '670 case about the process by which they reached settlement in that case and to hear argument on the issues discussed in this opinion. The parties should seek permission from the court if they wish to call any other witnesses.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for leave to file late summary judgment reply materials, Dkt. 99, is GRANTED.

2. Plaintiff Timothy Talley's motion for default, Dkt. 101, and motion to strike defendants' summary judgment reply, Dkt. 103, are DENIED.

3. Defendants' motion for summary judgment, Dkt. 93, is DENIED.

4. The clerk of court is directed to schedule an evidentiary hearing on defendants' motion to dismiss the case pursuant to the settlement agreement in case No. 17-cv-670-jdp.

Entered March 14, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge